IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NAUTILUS INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 19 CV 6607 |
| v. | ) | |
| | ) | |
| AFFORDABLE CONSTRUCTION & | ) | |
| PROPERTY MAINTENANCE, INC.; BLUE | ) | |
| STAR PROPERTIES, INC.; and RICKY | ) | |
| STRAUGHTER, | ) | |
| | | |
| Defendants. | | |

## **COMPLAINT FOR DECLARATORY JUDGMENT**

Now comes Plaintiff, Nautilus Insurance Company ("Nautilus"), by and through its attorneys, Dana A. Rice, Adam P. Joffe, and Philip G. Brandt of Traub Lieberman Straus & Shrewsberry LLP, and for its Complaint for Declaratory Judgment against Defendants Affordable Construction & Property Maintenance, Inc. ("Affordable Construction"), Blue Star Properties, Inc. ("Blue Star"), and Ricky Straughter ("Straughter") (collectively, the "Defendants"), it states as follows:

## **THE PARTIES**

1. Nautilus is, and at all relevant times has been, a corporation organized under the laws of Arizona with its principal place of business in Scottsdale, Arizona. At all times relevant hereto, Nautilus was a surplus lines insurer whose policies may be sold in Illinois.

2. At all times relevant hereto, Affordable Construction was a corporation organized under the laws of Illinois with its principal place of business located in Blue Island, Illinois.

3. At all times relevant hereto, Blue Star was a corporation organized under the laws of Illinois with its principal place of business located in Chicago, Illinois.

1

4.     At all times relevant hereto, Straughter was a resident and citizen of Cook County, Illinois.

## JURISDICTION

5.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) in that the citizenship of the parties is diverse and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.  Specifically, the case relates to an insurance policy providing well in excess of $75,000 in coverage.

## VENUE

6.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2) because a substantial part of the events giving rise to this litigation occurred in this judicial district, and because at least one of the defendants is a resident of this judicial district and all defendants are residents of the State of Illinois.

## THE UNDERLYING LAWSUIT

7.     On or about April 21, 2017, Straughter filed a Complaint at Law against Blue Star in the Circuit Court of Cook County, Illinois, under Case Number 2017 L 003997 ("*Straughter* Lawsuit").

8.     On or about April 5, 2018, Straughter filed a Second Amended Complaint at Law against Blue Star, Affordable Construction, and Competitive Concrete Cutting, Inc. ("Competitive Concrete") ("*Straughter* SAC").  (A copy of the *Straughter* SAC is attached hereto as **Exhibit A** and incorporated herein by reference.)

9.     The *Straughter* SAC arises from an April 18, 2016 incident in which Straughter allegedly suffered severe and permanent injuries when he fell into a hole while working at a construction site located at 1010 W. 35th Street, Chicago, Illinois ("Construction Site").

2

10. Count I of the *Straughter* SAC alleges that, on April 18, 2016, Blue Star "owned and/or was in charge of the erection, construction, repairs, alteration, removal, and/or painting of a certain building or other structure located at approximately 1010 W. 35th Street in the City of Chicago…" (Ex. A, Count I, ¶ 1.)[1]

11. Count I of the *Straughter* SAC alleges that "at the aforementioned time and place there was, in force and effect, a contract between [Blue Star] and ASAP Temp Agency." (Ex. A, Count I, ¶ 2.)

12. Count I of the *Straughter* SAC further alleges that Straughter was employed by ASAP Temp Agency and was on the Construction Site "in the furtherance of the aforesaid work." (Ex. A, Count I, ¶ 3.).

13. Count I of the *Straughter* SAC alleges that Blue Star "participated in coordinating the work being done and designated various work methods, maintained and checked work progress and participated in the scheduling of the work and the inspection of the work, and were likewise responsible for the work being performed pursuant to Section 1926.16 of the Occupational, Safety & Health Administration." (Ex. A, Count I, ¶ 4.)

14. Count I of the *Straughter* SAC further alleges that Blue Star had the authority to stop work and/or make any necessary changes to the work in the event that the work being performed was unduly dangerous or for any other reason. (Ex. A, Count I, ¶ 4.)

15. Count I of the *Straughter* SAC alleges that Blue Star "had supervision and control of the work, retention of the right to supervise and control the work, constant participation in ongoing activities at the construction site, supervision and coordination of subcontractors,

---

[1] Subsequent counts of the *Straughter* SAC renumber paragraphs starting at paragraph 1. For the purpose of clarity, this Complaint for Declaratory Judgment will cite to both the count number and the paragraph number from the *Straughter* SAC.

responsibility for taking safety precautions at the job site, authority to issue change orders, the right to stop work, ownership of the equipment at the job site, familiarity with construction customs and practices and had been in a position to assure worker safety or alleviate equipment deficiencies or improper work habits." (Ex. A, Count I, ¶ 4.)

16. Count I of the *Straughter* SAC alleges that, on April 18, 2016, Blue Star had "erected, constructed, placed or operated, or caused to be erected, constructed, placed or operated, a certain hole or opening in the floor" in furtherance of the construction work being provided by it. (Ex. A, Count I, ¶ 5.)

17. Count I of the *Straughter* SAC further alleges that Blue Star had a duty to exercise reasonable care for Straughter's safety. (Ex. A, Count I, ¶¶ 6-8.)

18. Count I of the *Straughter* SAC alleges that Blue Star breached its duties by: (1) failing to maintain the Construction Site in a condition that was reasonably safe for use by Straughter and others; (2) failing to provide Straughter with a safe place to work; (3) failing to provide Straughter with a safe place to walk; (4) failing to provide adequate safeguards at the Construction Site; (5) failing to protect Straughter, resulting in him falling through an unprotected opening in the floor; (6) allowing Straughter and others to work in an unsafe environment; (7) allowing Straughter and others to walk in an unsafe environment; (8) allowing Straughter and others to work near improperly guarded openings or holes; (9) maintaining the Construction Site in a hazardous condition; (10) failing to mark unguarded openings or holes; (11) failing to barricade unguarded openings or holes; (12) failing to cover unguarded openings or holes; (13) failing to adequately correct the unsafe conditions at the Construction Site; (14) failing to provide adequate safety equipment; (15) failing to provide an adequate or suitable fall protection system; (16) failing to provide the Construction Site with appropriate perimeter cables and/or tie-off safety

cables; (17) allowing workers to work at elevations without proper supports; (18) failing to allow for safe working procedures and conditions at the Construction Site; (19) failing to provide adequate supervision; (20) failing to provide adequate inspections; (21) failing to adequately correct the aforementioned problems at the Construction Site; (22) failing to provide adequate training; (23) failing to have adequate safety policies in place; and (24) failing to adequately coordinate the Construction Site to prevent injuries.  (Ex. A, Count I, ¶ 9.)

19.     Count I of the *Straughter* SAC alleges that, as a result of Blue Star's errors and/or omissions, Straughter was badly injured when he fell into a hole at the Construction Site.  (Ex. A, Count I, ¶¶ 10-11.)

20.     Count I of the *Straughter* SAC alleges that Blue Star's errors and/or omissions were the proximate cause of Straughter's injuries.  (Ex. A, Count I, ¶ 12.)

21.     Count II of the *Straughter* SAC alleges that, on April 18, 2016, Affordable Construction "owned and/or was in charge of the erection, construction, repairs, alteration, removal, and/or painting of a certain building or other structure located at approximately 1010 W. 35th Street in the City of Chicago…"  (Ex. A, Count II, ¶ 1.)

22.     Count II of the *Straughter* SAC alleges that "at the aforementioned time and place there was, in force and effect, a contract between [Affordable Construction] and ASAP Temp Agency."  (Ex. A, Count II, ¶ 2.)

23.     Count II of the *Straughter* SAC further alleges that Straughter was employed by ASAP Temp Agency and was on the Construction Site "in the furtherance of the aforesaid work."  (Ex. A, Count II, ¶ 3.).

24.     Count II of the *Straughter* SAC alleges that Affordable Construction "participated in coordinating the work being done and designated various work methods, maintained and

checked work progress and participated in the scheduling of the work and the inspection of the work, and were likewise responsible for the work being performed pursuant to Section 1926.16 of the Occupational, Safety & Health Administration." (Ex. A, Count II, ¶ 4.)

25. Count II of the *Straughter* SAC further alleges that Affordable Construction had the authority to stop work and/or make any necessary changes to the work in the event that the work being performed was unduly dangerous or for any other reason. (Ex. A, Count II, ¶ 4.)

26. Count II of the *Straughter* SAC alleges that Affordable Construction "had supervision and control of the work, retention of the right to supervise and control the work, constant participation in ongoing activities at the construction site, supervision and coordination of subcontractors, responsibility for taking safety precautions at the job site, authority to issue change orders, the right to stop work, ownership of the equipment at the job site, familiarity with construction customs and practices and had been in a position to assure worker safety or alleviate equipment deficiencies or improper work habits." (Ex. A, Count II, ¶ 4.)

27. Count II of the *Straughter* SAC alleges that, on April 18, 2016, Affordable Construction had "erected, constructed, placed or operated, or caused to be erected, constructed, placed or operated, a certain hole or opening in the floor" in furtherance of the construction work being provided by it. (Ex. A, Count II, ¶ 5.)

28. Count II of the *Straughter* SAC further alleges that Affordable Construction had a duty to exercise reasonable care for Straughter's safety. (Ex. A, Count II, ¶¶ 6-8.)

29. Count II of the *Straughter* SAC alleges that Affordable Construction breached its duties by: (1) failing to maintain the Construction Site in a condition that was reasonably safe for use by Straughter and others; (2) failing to provide Straughter with a safe place to work; (3) failing to provide Straughter with a safe place to walk; (4) failing to provide adequate safeguards at the

6

Construction Site; (5) failing to protect Straughter, resulting in him falling through an unprotected opening in the floor; (6) allowing Straughter and others to work in an unsafe environment; (7) allowing Straughter and others to walk in an unsafe environment; (8) allowing Straughter and others to work near improperly guarded openings or holes; (9) maintaining the Construction Site in a hazardous condition; (10) failing to mark unguarded openings or holes; (11) failing to barricade unguarded openings or holes; (12) failing to cover unguarded openings or holes; (13) failing to adequately correct the unsafe conditions at the Construction Site; (14) failing to provide adequate safety equipment; (15) failing to provide an adequate or suitable fall protection system; (16) failing to provide the Construction Site with appropriate perimeter cables and/or tie-off safety cables; (17) allowing workers to work at elevations without proper supports; (18) failing to allow for safe working procedures and conditions at the Construction Site; (19) failing to provide adequate supervision; (20) failing to provide adequate inspections; (21) failing to adequately correct the aforementioned problems at the Construction Site; (22) failing to provide adequate training; (23) failing to have adequate safety policies in place; and (24) failing to adequately coordinate the Construction Site to prevent injuries. (Ex. A, Count II, ¶ 9.)

30. Count II of the *Straughter* SAC alleges that, as a result of Affordable Construction's errors and/or omissions, Straughter was badly injured when he fell into a hole at the Construction Site. (Ex. A, Count II, ¶¶ 10-11.)

31. Count II of the *Straughter* SAC alleges that Affordable Construction's errors and/or omissions were the proximate cause of Straughter's injuries. (Ex. A, Count II, ¶ 12.)

32. Count III of the *Straughter* SAC is not germane to the instant lawsuit as it asserts claims against Competitive Concrete, a non-party to this lawsuit.

**THE NAUTILUS POLICY**

33.     Nautilus issued a commercial general liability insurance policy to Affordable Construction under Policy Number NN682848, which provided coverage for the period of April 12, 2016 to June 12, 2016 ("Nautilus Policy"). The Nautilus Policy provides $1,000,000 of liability coverage for each "occurrence" subject to a general aggregate limit of $2,000,000, and a $5,000 medical expense limit. The Policy is also subject to a $500 per claim deductible for "bodily injury" and "property damage" liability. (A copy of the Nautilus Policy is attached hereto as **Exhibit B** and is incorporated herein by reference.)

34.     Nautilus also issued a commercial excess liability insurance policy to Affordable Construction under Policy Number AN027242, which provided coverage for the period of April 12, 2016 to June 12, 2016 ("Nautilus Excess Policy"). The Nautilus Excess Policy provides $5,000,000 of liability coverage for each covered loss subject to a general aggregate limit of $5,000,000. (A copy of the Nautilus Excess Policy is attached hereto as **Exhibit C** and is incorporated herein by reference).

**COUNT I**

**THE "INJURY TO EMPLOYEES, CONTRACTORS, VOLUNTEERS AND OTHER WORKERS" EXCLUSION BARS COVERAGE FOR THE CLAIMS ASSERTED IN THE *STRAUGHTER* LAWSUIT**

35.     Nautilus adopts and realleges the allegations in paragraphs 1 through 34 of its Complaint for Declaratory Judgment as paragraph 35 of Count I of its Complaint for Declaratory Judgment as if fully set forth herein.

36.     Coverage A of the Nautilus Policy provides, in relevant part, the following with respect to the liability coverage afforded therein:

**SECTION I – COVERAGES**

8

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.    Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

        **(1)**    The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

        **(2)**    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

    **b.**    This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)**    The "bodily injury" or "property damage" occurs during the policy period …

* * *

(*See* Ex. B.)

37.    The Nautilus Policy also includes Form L205 (11/10), an endorsement addressing bodily injury to employees, contractors, volunteers and other workers:

<strong>EXCLUSION – INJURY TO EMPLOYEES, CONTRACTORS,<br>VOLUNTEERS AND WORKERS</strong>

This endorsement modifies insurance provided under the following:

9

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.      Exclusion **e. Employer's Liability** under Paragraph **2**., **Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is **replaced** by the following:

This insurance does not apply to:

e.      **Injury to Employees, Contractors, Volunteers and Other Workers**

"Bodily injury" to:

**(1)**     "Employees", "leased workers", "temporary workers", "volunteer workers", statutory "employees", casual workers, seasonal workers, contractors, subcontractors, or independent contractors of any insured; or

**(2)**     Any insured's contractors', subcontractors', or independent contractors' "employees", "leased workers", "temporary workers", "volunteer workers", statutory "employees", casual workers, seasonal workers, contractors, subcontractors, or independent contractors

arising out of and in the course of:

**(a)**     Employment by any insured; or

**(b)**     Directly or indirectly performing duties related to the conduct of any insured's business; or

**(3)**     The spouse, child, parent, brother or sister of that "employee", "leased worker", "temporary worker", "volunteer worker", statutory "employee", casual worker, seasonal worker, contractor, subcontractors, or independent contractor arising out of Paragraph **(1)** or **(2)** above.

This exclusion applies:

**(1)**     Regardless of where the:

**(a)**     Services are performed; or

                **(b)**     "Bodily injury" occurs; and

      **(2)**     Whether any insured may be liable as an employer or in any other capacity; and

      **(3)**     To any obligation to share damages with or replay someone else who must pay damages because of the injury.

**B**.     Exclusion **a. Any Insured** of **2., Exclusions** of **Section I – Coverage C – Medical Payments** is **replaced** by the following:

We will not pay expenses for "bodily injury":

**a.**     **Any Insured**

     To any insured.

(*See* Ex. B.)

38.    The Nautilus Policy defines the terms "bodily injury", "employee," "leased worker", "occurrence", "temporary worker", and "volunteer worker" as follows:

**SECTION V – DEFINITIONS**

\* \* \*

**3.**    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

**5.**    "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

\* \* \*

**10.**    "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a temporary worker.

\* \* \*

**13.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

**19.**    "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave to meet seasonal or short-term workload conditions.

\* \* \*

**20.**    "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of

11

duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

(*See* Ex. B.)

39.     The *Straughter* SAC alleges that Affordable Construction "owned and/or was in charge of the erection, construction, repairs, alteration, removal and/or painting of" the Construction Site.  (Ex. A, Count II, ¶ 1.)

40.     The *Straughter* SAC further alleges that "at the aforementioned time and place there was, in force and effect, a contract between [Affordable Construction] and ASAP Temp Agency."  (Ex. A, Count II, ¶ 2.)

41.     The *Straughter* SAC alleges that "at the aforementioned time and place, [Straughter] was employed by ASAP Temp Agency on [the Construction Site] in the furtherance of the aforesaid work."  (Ex. A, Count II, ¶ 3.)

42.     The *Straughter* SAC further alleges that Affordable Construction "participated in coordinating the work being done and designated various work methods, maintained and checked work progress and participated in the scheduling of the work and the inspection of the work, and were likewise responsible for the work being performed pursuant to Section 1926.16 of the Occupational, Safety & Health Administration."  (Ex. A, Count II, ¶ 4.)

43.     The *Straughter* SAC further alleges that Affordable Construction had the authority to stop work and/or make any necessary changes to the work in the event that the work being performed was unduly dangerous or for any other reason.  (Ex. A, Count II, ¶ 4.)

44.     The *Straughter* SAC alleges that Affordable Construction "had supervision and control of the work, retention of the right to supervise and control the work, constant participation in ongoing activities at the construction site, supervision and coordination of subcontractors, responsibility for taking safety precautions at the job site, authority to issue change orders, the

right to stop work, ownership of the equipment at the job site, familiarity with construction customs and practices and had been in a position to assure worker safety or alleviate equipment deficiencies or improper work habits." (Ex. A, Count II, ¶ 4.)

45. The *Straughter* SAC also alleges that, on April 18, 2016, Blue Star "owned and/or was in charge of the erection, construction, repairs, alteration, removal, and/or painting of a certain building or other structure located at approximately 1010 W. 35th Street in the City of Chicago…" (Ex. A, Count I, ¶ 1.)

46. The *Straughter* SAC alleges that "at the aforementioned time and place there was, in force and effect, a contract between [Blue Star] and ASAP Temp Agency." (Ex. A, Count I, ¶ 2.)

47. The *Straughter* SAC further alleges that Straughter was employed by ASAP Temp Agency and was on the Construction Site "in the furtherance of the aforesaid work." (Ex. A, Count I, ¶ 3.).

48. The *Straughter* SAC alleges that Blue Star "participated in coordinating the work being done and designated various work methods, maintained and checked work progress and participated in the scheduling of the work and the inspection of the work, and were likewise responsible for the work being performed pursuant to Section 1926.16 of the Occupational, Safety & Health Administration." (Ex. A, Count I, ¶ 4.)

49. The *Straughter* SAC further alleges that Blue Star had the authority to stop work and/or make any necessary changes to the work in the event that the work being performed was unduly dangerous or for any other reason. (Ex. A, Count I, ¶ 4.)

50. The *Straughter* SAC alleges that Blue Star "had supervision and control of the work, retention of the right to supervise and control the work, constant participation in ongoing

activities at the construction site, supervision and coordination of subcontractors, responsibility for taking safety precautions at the job site, authority to issue change orders, the right to stop work, ownership of the equipment at the job site, familiarity with construction customs and practices and had been in a position to assure worker safety or alleviate equipment deficiencies or improper work habits." (Ex. A, Count I, ¶ 4.)

51.     To the extent that the *Straughter* Lawsuit alleges "bodily injury" resulting from an "occurrence," the "Injury to Employees, Contractors, Volunteers and Workers" Exclusion bars coverage under Coverage A of the Nautilus Policy for Affordable Construction and Blue Star for the claims asserted in the *Straughter* Lawsuit.

52.     Nautilus has and had no duty under the Nautilus Policy to defend Affordable Construction and/or Blue Star against the *Straughter* Lawsuit or to indemnify Affordable Construction and/or Blue Star for any judgment or settlement entered in the *Straughter* Lawsuit.

53.     An actual controversy exists between Nautilus, Affordable Construction, Blue Star, and Straughter, and, by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

a.     Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Nautilus Policy;

b.     Find and declare that the Nautilus Policy's "Injury to Employees, Contractors, Volunteers and Workers" Exclusion bars coverage for the damages alleged in the *Straughter* Lawsuit;

c.     Find and declare that Nautilus has and had no duty under the Nautilus Policy to defend Affordable Construction and/or Blue Star against the *Straughter* Lawsuit, or to indemnify Affordable Construction and/or Blue Star for any judgment or settlement entered therein; and

    d.    Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT II

## THE "CONTRACTORS" EXCLUSION BARS COVERAGE FOR THE CLAIMS ASSERTED IN THE *STRAUGHTER* LAWSUIT

54.    Nautilus adopts and realleges the allegations in paragraphs 1 through 53 of its Complaint for Declaratory Judgment as paragraph 54 of Count II of its Complaint for Declaratory Judgment as if fully set forth herein.

55.    The Policy also includes Form L282 (07/10), an endorsement addressing "bodily injury" arising out of work performed by a contractor or subcontractor:

### EXCLUSION – CONTRACTORS AND SUBCONTRACTORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is **added** to **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability, Coverage B – Personal And Advertising Injury Liability** and **Coverage C – Medical Payments:**

This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of work performed by any contractor or subcontractor whether hired by or on behalf of any insured, or any acts or omissions in connection with the general supervision of such work.

(hereinafter, the "Contractors Exclusion".)

(*See* Ex. B.)

56.    Here, the *Straughter* SAC alleges that Affordable Construction "owned and/or was in charge of the erection, construction, repairs, alteration, removal and/or painting of" the Construction Site.  (Ex. A, Count II, ¶ 1.)

57.     The *Straughter* SAC further alleges that "at the aforementioned time and place there was, in force and effect, a contract between [Affordable Construction] and ASAP Temp Agency."  (Ex. A, Count II, ¶ 2.)

58.     The *Straughter* SAC alleges that "at the aforementioned time and place, [Straughter] was employed by ASAP Temp Agency on [the Construction Site] in the furtherance of the aforesaid work."  (Ex. A, Count II, ¶ 3.)

59.     The *Straughter* SAC further alleges that Affordable Construction "participated in coordinating the work being done and designated various work methods, maintained and checked work progress and participated in the scheduling of the work and the inspection of the work, and were likewise responsible for the work being performed pursuant to Section 1926.16 of the Occupational, Safety & Health Administration."  (Ex. A, Count II, ¶ 4.)

60.     The *Straughter* SAC further alleges that Affordable Construction had the authority to stop work and/or make any necessary changes to the work in the event that the work being performed was unduly dangerous or for any other reason.  (Ex. A, Count II, ¶ 4.)

61.     The *Straughter* SAC alleges that Affordable Construction "had supervision and control of the work, retention of the right to supervise and control the work, constant participation in ongoing activities at the construction site, supervision and coordination of subcontractors, responsibility for taking safety precautions at the job site, authority to issue change orders, the right to stop work, ownership of the equipment at the job site, familiarity with construction customs and practices and had been in a position to assure worker safety or alleviate equipment deficiencies or improper work habits."  (Ex. A, Count II, ¶ 4.)

62.     The *Straughter* SAC also alleges that, on April 18, 2016, Blue Star "owned and/or was in charge of the erection, construction, repairs, alteration, removal, and/or painting of a certain

building or other structure located at approximately 1010 W. 35th Street in the City of Chicago…"
(Ex. A, Count I, ¶ 1.)

63.      The *Straughter* SAC alleges that "at the aforementioned time and place there was,
in force and effect, a contract between [Blue Star] and ASAP Temp Agency."  (Ex. A, Count I, ¶
2.)

64.      The *Straughter* SAC further alleges that Straughter was employed by ASAP Temp
Agency and was on the Construction Site "in the furtherance of the aforesaid work."  (Ex. A, Count
I, ¶ 3.).

65.      The *Straughter* SAC alleges that Blue Star "participated in coordinating the work
being done and designated various work methods, maintained and checked work progress and
participated in the scheduling of the work and the inspection of the work, and were likewise
responsible for the work being performed pursuant to Section 1926.16 of the Occupational, Safety
& Health Administration."  (Ex. A, Count I, ¶ 4.)

66.      The *Straughter* SAC further alleges that Blue Star had the authority to stop work
and/or make any necessary changes to the work in the event that the work being performed was
unduly dangerous or for any other reason.  (Ex. A, Count I, ¶ 4.)

67.      The *Straughter* SAC alleges that Blue Star "had supervision and control of the
work, retention of the right to supervise and control the work, constant participation in ongoing
activities at the construction site, supervision and coordination of subcontractors, responsibility
for taking safety precautions at the job site, authority to issue change orders, the right to stop work,
ownership of the equipment at the job site, familiarity with construction customs and practices and
had been in a position to assure worker safety or alleviate equipment deficiencies or improper work
habits."  (Ex. A, Count I, ¶ 4.)

68. To the extent that the *Straughter* Lawsuit alleges "bodily injury" resulting from an "occurrence," the "Contractors" Exclusion bars coverage under Coverage A of the Nautilus Policy for Affordable Construction and Blue Star for the claims asserted in the *Straughter* Lawsuit.

69. Nautilus has and had no duty under the Nautilus Policy to defend Affordable Construction and/or Blue Star against the *Straughter* Lawsuit or to indemnify Affordable Construction and/or Blue Star for any judgment or settlement entered in the *Straughter* Lawsuit.

70. An actual controversy exists between Nautilus, Affordable Construction, Blue Star, and Straughter, and, by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Nautilus Policy;

b. Find and declare that the Nautilus Policy's "Contractors" Exclusion bars coverage for the damages alleged in the *Straughter* Lawsuit;

c. Find and declare that Nautilus has and had no duty under the Nautilus Policy to defend Affordable Construction and/or Blue Star against the *Straughter* Lawsuit, or to indemnify Affordable Construction and/or Blue Star for any judgment or settlement entered therein; and

d. Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT III

## NO COVERAGE UNDER COVERAGE C

71. Nautilus adopts and realleges the allegations in paragraphs 1 through 70 of its Complaint for Declaratory Judgment as paragraph 71 of Count III of its Complaint for Declaratory Judgment as if fully set forth herein.

72. The Nautilus Policy provides, in relevant part, the following with respect to the medical payments coverage afforded therein:

**COVERAGE C MEDICAL PAYMENTS**

**1. Insuring Agreement**

   **a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

   **(1)** On premises you own or rent;

   **(2)** On ways next to premises you own or rent; or

   **(3)** Because of your operations;

   provided that:

   **(1)** The accident takes place in the "coverage territory" and during the policy period;

   **(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

   **(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

   **b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

   **(1)** First aid administered at the time of an accident;

   **(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

   **(3)** Necessary ambulance, hospital, professional nursing and funeral services.

   \* \* \*

(*See* Ex. B.)

73. Coverage C of the Nautilus Policy is subject to the following exclusion:

**2. Exclusions**

19

We will not pay expenses for "bodily injury":

\* \* \*

**b.** **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

\* \* \*

**d.** **Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

\* \* \*

**g.** **Coverage A Exclusions**

Excluded under Coverage A.

(*See* Ex. B.)

74. The *Straughter* Lawsuit alleges that Straughter was hired to do work on behalf of Affordable Construction and Blue Star. (Ex. A, Count I, ¶¶ 1-4; and Ex. A, Count II, ¶¶ 1-4.)

75. Therefore, the "Hired Person" Exclusion bars coverage under Coverage C for the claims asserted in the *Straughter* Lawsuit.

76. As an employee of ASAP Temp Agency, Straughter is entitled to compensation from his employer under relevant workers' compensation laws.

77. On information and belief, Straughter filed an action before the Illinois Workers' Compensation Commission, which is currently pending.

78. Therefore, the "Workers Compensation and Similar Laws" Exclusion bars coverage under Coverage C for the claims asserted in the *Straughter* Lawsuit.

79. Insofar as the Court determines that the "Injury to Employees, Contractors, Volunteers and Workers" Exclusion and/or the "Contractors" Exclusion bars coverage under Coverage A of the Nautilus Policy, Exclusion **g.**, "Coverage A Exclusions", bars coverage under Coverage C for the claims asserted on the *Straughter* Lawsuit.

20

80.     Nautilus has and had no duty under the Nautilus Policy to defend Affordable Construction and/or Blue Star against the *Straughter* Lawsuit or to indemnify Affordable Construction and/or Blue Star for any judgment or settlement entered in the *Straughter* Lawsuit.

81.     An actual controversy exists between Nautilus, Affordable Construction, Blue Star, and Straughter, and, by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

a.     Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Nautilus Policy;

b.     Find and declare that the "Hired Person" Exclusion, the "Workers Compensation and Similar Laws" Exclusion, and/or the "Coverage A Exclusions" bar coverage under Coverage C for the damages alleged in the *Straughter* Lawsuit;

c.     Find and declare that Nautilus has and had no duty under the Nautilus Policy to defend Affordable Construction and/or Blue Star against the *Straughter* Lawsuit, or to indemnify Affordable Construction and/or Blue Star for any judgment or settlement entered therein; and

d.     Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT IV

## NO COVERAGE UNDER THE NAUTILUS EXCESS POLICY

82.     Nautilus adopts and realleges the allegations in paragraphs 1 through 81 of its Complaint for Declaratory Judgment as paragraph 82 of Count IV of its Complaint for Declaratory Judgment as if fully set forth herein.

83.     The Nautilus Excess Policy provides, in relevant part, the following with respect to the liability coverage afforded therein:

## EXCESS LIABILITY POLICY
* * *

### SECTION I – EXCESS LIABILITY COVERAGE

**1.    Insuring Agreement**

    **a.**    We will pay on behalf of the "insured" the "ultimate net loss" in excess of the "underlying insurance limit" because of injury or damage caused by a "loss event" to which this insurance applies provided:

        **(1)**    The aggregate amount of all limits of "Underlying Insurance", has been exhausted by payment of judgments, settlements, costs or expenses; and

        **(2)**    The "loss event" occurs or is committed during the policy period.
        * * *

    **b.**    Except to the extent any terms, definitions, limits of insurance, conditions or exclusions of the "controlling underlying insurance" are different from any terms, definitions, limits of insurance, conditions or exclusion of this policy, this policy will provide the same coverage for "ultimate net loss" as provided by the "controlling underlying insurance". If any terms, definitions, limits of insurance, conditions or exclusion of this policy are more restrictive than those of the "controlling underlying insurance", then this policy's terms, definitions, limits of insurance, conditions or exclusions will apply. However, under no circumstance will this policy provide broader coverage than that provided by the "underlying insurance".
        * * *

(*See* Ex. C.)

84.    The Nautilus Excess Policy defines the terms "controlling underlying insurance", "loss event", "underlying insurance", and "ultimate net loss" as follows:

### SECTION IV – DEFINITIONS

**1.**    "Controlling underlying insurance" means the policy or policies that are indicated as such on the Schedule of "Underlying Insurance".
        * * *

**5.**     "Loss Event" means the happening, situation or circumstance that initiates the application of the "underlying insurance" as designated in the Schedule of "Underlying Insurance".

\* \* \*

**9.**     "Underlying insurance" means the coverage(s) afforded under insurance policies, for the limits shown, as designated in the Schedule of "Underlying Insurance", and any renewals or replacements of those policies. Policies endorsements or coverages written on a claims-made policy form will not be considered "underlying insurance".

\* \* \*

**8.**     "Ultimate net loss":

    **a.**     Means the total sum, after reduction for recoveries or salvages collectible, that the "insured" becomes legally obligated to pay be reason of a judgment against the "insured" after actual trial, or alternative dispute resolution by written agreement of the "insured", the claimant or the claimant's legal representative and us;

    **b.**     Includes the costs of attorneys fees in defending any claim or "suit" incurred by any "underlying insurer" if such costs are included within the limits of insurance of the "underlying insurance". However, these costs do not include salaries and expenses of employees or regular officials of the "underlying insurer" or the "insured"; and

    **c.**     Includes all interest on judgments paid by the "insured" or any "underlying insurer".

\* \* \*

(Ex. C)

85.     The Nautilus Excess Policy also incorporates Form NE 00 11 05 11, an endorsement addressing injury arising out of work performed by a contractor or subcontractor:

### EXCLUSION – CONTRACTORS AND SUBCONTRACTORS

This endorsement modifies insurance provided under the following:

    EXCESS LIABILITY POLICY

The following exclusion is added to **3. Exclusions** of **Section I – Excess Liability Coverage:**

This insurance does not apply to injury or damage arising out of work performed by any contractor or subcontractor whether hired by or on behalf of any "insured", or any acts or omissions in connection with the general supervision of such work.

(*See* Ex. C.)

86.     As set forth above, except to the extent any terms, definitions, limits of insurance, conditions or exclusions of the "controlling underlying insurance" are different from any terms, definitions, limits of insurance, conditions or exclusion of the Nautilus Excess Policy, the Nautilus Excess Policy provides the same coverage for "ultimate net loss" as provided by the "controlling underlying insurance", as those terms are defined by the Excess Policy. (*See* Ex. C)

87.     The Nautilus Excess Policy defines "controlling underlying insurance" as the policies designated as such under the Schedule of "Underlying Insurance".  (Ex. C.)

88.     The Nautilus Excess Policy's Schedule of "Underlying Insurance" includes the Nautilus Policy.  (Ex. C.)

89.     Moreover, subsection **(b)** of the Nautilus Excess Policy's insuring agreement specifically provides "under no circumstance will this policy provide broader coverage than that provided by the 'underlying insurance'", as that term is defined by the Nautilus Excess Policy. (Ex. C.)

90.     Additionally, with respect to the exclusions applicable to the excess liability coverage, the Nautilus Excess Policy states "[t]he following exclusions apply in addition to any applicable exclusion contained in the 'controlling underlying insurance'". (Ex. C.)

91.     As discussed above, the Nautilus Policy's "Injury to Employees, Contractors, Volunteers and Workers" Exclusion and "Contractors Exclusion" (among other exclusions) bar coverage for all of the claims asserted in the *Straughter* Lawsuit.

92.     Accordingly, the "Injury to Employees, Contractors, Volunteers and Workers" Exclusion and "Contractors Exclusion" (among other exclusions) also bar coverage under the Nautilus Excess Policy for the claims asserted in the *Straughter* Lawsuit.

93.     As a result, there is no coverage provided under either the Nautilus Policy or the Nautilus Excess Policy for the *Straughter* Lawsuit filed against Blue Star and Affordable Construction.

94.     Nautilus has and had no duty under the Nautilus Policy and/or the Nautilus Excess Policy to defend Affordable Construction and/or Blue Star against the *Straughter* Lawsuit or to indemnify Affordable Construction and/or Blue Star for any judgment or settlement entered in the *Straughter* Lawsuit.

95.     An actual controversy exists between Nautilus, Affordable Construction, Blue Star, and Straughter, and, by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

a.      Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Nautilus Policy and the Nautilus Excess Policy;

b.      Find and declare that there is no coverage provided under either the Nautilus Policy or the Nautilus Excess Policy for the claims asserted in the *Straughter* Lawsuit.

c.      Find and declare that Nautilus has and had no duty under the Nautilus Policy and/or the Nautilus Excess Policy to defend Affordable Construction and/or Blue Star against the *Straughter* Lawsuit, or to indemnify Affordable Construction and/or Blue Star for any judgment or settlement entered therein; and

d.      Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

**TRAUB, LIEBERMAN, STRAUS & SHREWSBERRY LLP**

By:   /s/ Dana A. Rice

Dana A. Rice
Adam P. Joffe
Philip G. Brandt
303 W. Madison Street
Suite 1200
Chicago, IL 60606
P: 332-3900
F: 312-332-3908
drice@tlsslaw.com
ajoffe@tlsslaw.com
pbrandt@tlsslaw.com

**ATTORNEYS FOR NAUTILUS INSURANCE COMPANY**